## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| PATRIA GONZALEZ,<br>    *Plaintiff*,<br><br>    v.<br><br>CONNECTICUT DEPARTMENT OF<br>CORRECTION, et al.,<br>    *Defendants*. | No. 3:20-cv-00736 (VAB) |

### RULING AND ORDER ON MOTIONS

Patria Gonzalez ("Plaintiff"), proceeding *pro se*, has sued the Connecticut Department of Correction (the "DOC"), then-interim and current Commissioner of the DOC Angel Quiros, and DOC Human Resources official Emily Kennedy (together, the "DOC Defendants") under 42 U.S.C. § 1983, alleging five counts of "gender discrimination," "age discrimination," "retaliation," "intentional infliction of emotional distress," and violations of the Fourteenth Amendment. *See* Am. Compl., ECF No. 11 at 30-32 (July 24, 2020) (the "Amended Complaint").[1]

Ms. Gonzalez also has moved to amend her Amended Complaint to "add a spoliation claim, a new cause of action polishing up her complaint, making it clearer," *see* Pls.' Mot. for Leave to File an Am. Compl., Due to Incidents by the Ct., Creating an Undue Delay for the Pl., ECF No. 27 at 2 (Nov. 6, 2020) ("Mot. to Amend"), and accordingly has filed a Second Amended Complaint that also seeks to add to the action Connecticut state officials Joseph Aresimowicz and Senator Cathy Osten (together, the "State Defendants," and together with the DOC Defendants, the "Defendants"). *See* Second Am. Compl., ECF No. 36 (Nov. 30, 2020).

---

[1] Unless otherwise specified, all page citations refer to a document's internal pagination.

The DOC Defendants have moved to dismiss the Amended Complaint for lack of subject matter jurisdiction and for failure to state a claim. Defs.' Mot. to Dismiss, ECF No. 20 (Oct. 16, 2020) ("DOC MTD"); Defs.' Mem. of L. in Supp. of Mot. to Dismiss, ECF No. 20-1 (Oct. 16, 2020) ("DOC MTD Mem."). The DOC Defendants also have objected to Ms. Gonzalez's filing of the Second Amended Complaint without having obtained leave from the Court. *See* Defs.' Obj. to Pl.'s Mot. for Leave to File an Am. Compl., ECF No. 35 (Nov. 27, 2020) ("DOC Obj. Mot. to Amend"); Defs.' Obj. to Pl.'s Filing a Second Am. Compl. without the Ct.'s Permission, ECF No. 43 (Dec. 15, 2020) ("DOC Obj. Second Am. Compl.").

The State Defendants have moved to dismiss the Second Amended Complaint. *See* Def. Aresimowicz's Mot. to Dismiss, ECF No. 51 (Dec. 28, 2020) ("Aresimowicz MTD") (moving to dismiss due to *res judicata* as well as for lack of subject matter jurisdiction); Def. Aresimowicz's Mem. of L. in Supp. of Mot. to Dismiss Pl.'s Second Am. Compl., ECF No. 51-1 (Dec. 28, 2020) ("Aresimowicz MTD Mem."); Def. Osten's Mot. to Dismiss, ECF No. 54 (Dec. 28, 2020) (moving to dismiss due to *res judicata* and for failure to state a claim) ("Osten MTD"); Def. Osten's Mem. of L. in Supp. of Mot. to Dismiss Pl.'s Second Am. Compl., ECF No. 54-1 (Dec. 28, 2020) ("Osten MTD Mem.").

Ms. Gonzalez additionally has filed a variety of other motions, including several motions to "strike" various filings on the docket, *see* Mot. to Strike Def.'s Obj. to Pl. Filing a Second Am. Compl., ECF No. 47 (Dec. 22, 2020) ("Mot. to Strike Obj. to Second Am. Compl."); Pl.'s Mot. to Strike, ECF No. 71 (Feb. 6, 2021) ("Mot. to Strike Aresimowicz Reply"); Pl's Mot. to Strike, ECF No. 72 (Feb. 6, 2021) ("Mot. to Strike Osten Reply"); a motion regarding "abuse of discretion," *see* Mot. Abuse of Discretion, ECF No. 42 (Dec. 14, 2020) ("Mot. Abuse Discretion"); a motion requesting discovery, *see* Pl.'s Mot. for Disc., ECF No. 60 (Jan. 26, 2021)

("Mot. for Disc."); a "motion to show cause," *see* Mot. to Show Cause, ECF No. 56 (Dec. 29,

2020) ("Mot. to Show Cause"); a motion for default judgment, *see* Mot. to Default the Defs.,

ECF No. 74 (Feb. 6, 2021) ("Mot. for Default J."); a motion for injunctive relief, *see* Pls.' Mot.

for Injunctive Relief, ECF No. 61 (Jan. 26, 2021) ("Mot. for Injunction"); a motion to

amend/correct her memorandum in support of her motion for injunctive relief, *see* Mot. to

Amend, ECF No. 65 (Feb. 1, 2021) ("Mot. to Amend Mot. for Injunction"); a motion to

"record[] political malfeasance," *see* Mot. Recording Political Malfeasance, ECF No. 75 (Feb. 6,

2021) ("Mot. Recording Malfeasance"); and two motions requesting an update on the status of

the case, *see* Mot. Requesting Status, ECF No. 78 (Mar. 29, 2021) ("First Mot. for Status"); Mot.

Requesting Status, ECF No. 79 (Mar. 29, 2021) ("Second Mot. for Status").

For the following reasons, the DOC Defendants' motion to dismiss, ECF No. 20, will be

**GRANTED**;

All claims against the Department of Correction and against Commissioner Quiros and

Ms. Kennedy in their official capacities will be dismissed with prejudice. All claims against

Commissioner Quiros and Ms. Kennedy in their individual capacities will be dismissed without

prejudice to Ms. Gonzalez filing a Third Amended Complaint, by **June 25, 2021**, to correct the

deficiencies identified in this Order and Ruling; a failure to file a Third Amended Complaint by

**June 25, 2021** will result in this case being dismissed with prejudice;

Ms. Gonzalez's motion to amend the Amended Complaint, ECF No. 27; motion for abuse

of discretion, ECF No. 42; motions to strike, ECF Nos. 47, 71, and 72; motion to show cause,

ECF No. 56; motion for discovery, ECF No. 60; motion for default judgment, ECF No. 74; and

motion recording political malfeasance, ECF No. 75, will be **DENIED**;

Mr. Aresimowicz and Senator Osten's motions to dismiss, ECF Nos. 51 & 54, will be **DENIED as moot**;

Ms. Gonzalez's motions requesting a status update on the case, ECF Nos. 78 & 79, will be **DENIED as moot**;

Ms. Gonzalez's motion to amend/correct her memorandum in support of her motion for injunctive relief, ECF No. 65, will be **GRANTED**; and

Ms. Gonzalez's motion for injunctive relief, ECF No. 61, will be **DENIED as moot**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations[2]

#### i.   Ms. Gonzalez's Prior DOC Employment

From August 1996 to March 2006, Ms. Gonzalez allegedly worked for the DOC. Am. Compl. ¶ 19. She allegedly "became a union steward for AFSCME at New Haven Correctional," where she allegedly worked "[f]rom 1996 to the fall of 2000." *Id.* ¶¶ 19, 21.

During her time as an AFSCME union steward, she allegedly "wrote quality of life proposals . . . in order to improve her work environment," which "included ways to improve the operation of the Correctional facility." *Id.* ¶ 21.

She allegedly "develop[ed] a reputation for [being] a goody two shoes with AFSCME and union leaders," and allegedly was "warned . . . to keep a low profile" by Tom Mulhall, "the AFSCME President of Local 1565." *Id.* ¶ 22.

She allegedly "had fully satisfactory employment evaluations, while working at New Haven Correctional." *Id.* ¶ 24.

---

[2] Unless otherwise stated, all factual allegations are drawn from the Amended Complaint.

"In the fall of 2000," Ms. Gonzalez allegedly "transferred from New Haven Correctional to Hartford Correctional Institution." *Id.* ¶ 25. In November of 2000, Ms. Gonzalez allegedly "was nearly nine months pregnant." *Id.* ¶ 26. It allegedly was "common practice for Department of Correction supervisors to discuss employees' previous facility employment history" when they "tranferr[ed] into a new jail or prison." *Id.*

"[D]ays after she arrived at the facility," Ms. Gonzalez allegedly "was sexually assaulted at Hartford Correctional" by "a coworker with a (not known at the time) criminal history . . ., while her supervisor Captain Charles Ruffin [allegedly] watched." *Id.* ¶ 27. The incident allegedly "caused her to go into premature labor." *Id.*

On January 17, 2003, Ms. Gonzalez allegedly "was the victim of another officer who [allegedly] threatened to kill her and [allegedly] put a bullet between her eyes with her gun." *Id.* ¶ 28. Allegedly due to the incident, Ms. Gonzalez allegedly "was transferred to U[C]onn Medical Center on day shift from Hartford Correctional." *Id.*

On December 11, 2003, Ms. Gonzalez allegedly "went to Hartford Correctional on official union business to hand out election information." *Id.* ¶ 29. Ms. Gonzalez allegedly was "escorted . . . off [of the] Hartford Correctional grounds" by a warden, who allegedly had been "summoned" by AFSCME steward Errol Goodison "to speak with her." *Id.*

On January 15, 2004, Ms. Gonzalez allegedly testified at an "open public hearing at AFSCME Council 4." *Id.* ¶¶ 30, 31. Her testimony described the alleged incidents at Hartford Correctional. *See id.* ¶¶ 31-35.

"Immediately[] after the January 15, 2004 public testimony," Ms. Gonzalez allegedly "was retaliated against by both the [DOC] and AFSCME on a regular basis." *Id.* ¶ 36.

The night of Ms. Gonzalez's testimony, DOC Human Resources official Tracey Butler allegedly called Ms. Gonzalez "[a] white racist bitch." *Id.* ¶ 38. Mr. Mulhall allegedly "informed [Ms. Gonzalez] to watch her back because the [DOC] and the union were coming after her[] for her public testimony." *Id.*

After providing her testimony, Ms. Gonzalez allegedly "was bombarded with a tsunami of frivolous internal investigations, threats and intimidation at work like never before." *Id.* "AFSCME [allegedly] encouraged the [DOC] to intimidate, harass, and investigate [Ms. Gonzalez]," and allegedly "had no intention of defending her, making her work life unbearable." *Id.* ¶ 37.

On January 15, 2004, Ms. Gonzalez allegedly "went to a bar restaurant. . . to decompress from her uncomfortable testimony." *Id.* ¶ 39. An "anonymous [DOC] male employee" allegedly "filed a complaint" after hearing Ms. Gonzalez "discuss the hearing with her friends." *Id.* On February 23, 2004, a complaint allegedly was filed by Angel Medina from Hartford Correctional, an allegation which the DOC allegedly "investigated and found . . . [to be] unsubstantiated." *Id.*

On January 24, 2004, various AFSCME officials "wrote a letter to the [DOC] Commissioner" but "made no mention of [Ms. Gonzalez's] sexual assault." *Id.* ¶ 40.

On June 25, 2004, Ms. Gonzalez allegedly attended "training at Macdougall training location." *Id.* ¶ 41. While there, a training correction officer allegedly stated "the bright side of sexual harassment is that you can end up at UC[onn] Medical Center on day shift." *Id.* ¶ 42.

On August 26, 2004, Ms. Gonzalez allegedly "was locked inside the Lieutenant's office against her will" by various officials, who allegedly "blocked the exit with union steward Errol Goodison in the small office, who was the friend of the officer who threatened her at Hartford Correctional, in order to incite an incident." *Id.* ¶ 43. Ms. Gonzalez allegedly asked UConn union

steward Brenda Lewis to represent but they allegedly "denied her." Lieutenant Lou Taylor allegedly "admitted to the plaintiff's attorney" that he "locked her in his office" and later "apologized." *Id.* ¶ 44.

The alleged "harassment" allegedly "continued for the rest of 2004," as "AFSCME [allegedly] stripped [Ms. Gonzalez] of her union credentials," and "DOC took away her Monday through Friday position." *Id.* ¶ 45.

On October 25, 2005, Ms. Gonzalez allegedly "was being harassed at UC[onn] Medical Center" by three officers. *Id.* ¶ 46. The officers allegedly "made false allegations" against Ms. Gonzalez "to incite an incident." *Id.* The "Chief Union Steward" at UConn allegedly said that "[Mr.] Aresimowicz told her that he thought [Ms. Gonzalez] was crazy for her public testimony" and "that everyone thinks she's a nut." *Id.*

On November 2, 2005, Ms. Gonzalez allegedly was "arrested for a DWI," allegedly "[b]ecause . . . the harassment, fears, stress, hostile work environment, [and] constant investigations[] caused [her] to cope with the abuse at work by drinking." *Id.* ¶ 47. The DWI charges allegedly "were all disposed of immediately." *Id.*

On April 7, 2006, Ms. Gonzalez allegedly "was terminated without due process because the [DOC] argued they could use erased non-conviction records against [her] at [a]rbitration." *Id.* at ¶ 49 (emphasis omitted). Greg Rubino, allegedly an AFSCME union steward, allegedly told Ms. Gonzalez, "[y]ou are the fastest termination in the history of the [DOC], you must have really pissed off the wrong people." *Id.* ¶ 50. Ms. Gonzalez allegedly "shared dozens of cases where [DOC] officers were working with felony criminal records and the [a]rbitrator ignored them all." *Id.* ¶ 51. Mr. Quiros allegedly "tampered with the United States Postal Service . . . to secure [Ms. Gonzalez's] original termination from her employment with the [DOC]." *Id.* ¶ 54.

### ii. **Ms. Gonzalez's 2019 DOC Application**

Nearly thirteen years after her termination, on January 5, 2019, Ms. Gonzalez allegedly "saw there was an opening, so she applied for her old job back as a corrections officer." *Id.* ¶ 56. She had allegedly "applied earlier, yet had technical difficulties, so she allegedly contacted Catherine Ribiero at the [DOC] to assist her in completing the application online." *Id.*

On January 9, 2019, Ms. Gonzalez allegedly "got the courage to attend opening day of the Connecticut Legislative session," where she allegedly "met Connecticut House Speaker [Mr.] Aresimowicz." *Id.* ¶ 57. She allegedly "asked [Mr. Aresimowicz] for a meeting to discuss a Forced Arbitration proposal and to help get her old job back." *Id.* Mr. Aresimowicz allegedly "agreed and instructed [her] to speak with the appointment scheduler, Kathy Salvio." *Id.* Ms. Gonzalez allegedly "met Kathy" and "set up a date for February 5, 2019." *Id.*

On January 25, 2019, Ms. Gonzalez allegedly both sent by mail and e-mail a letter to Ms. Riberio, who allegedly was the DOC's human resources manager. *Id.* ¶ 58. Ms. Gonzalez allegedly "indicated in this letter [that] she was using [Mr.] Aresimowicz as her reference" and if Ms. Riberio "had any questions, she should contact him." *Id.* Mr. Aresimowicz, Ms. Salvio, and Ms. Gonzalez allegedly "exchanged e[-]mails and text messages." *Id.* ¶ 59.

On February 5, 2019, Ms. Gonzalez allegedly "went to the Legislative office building with her daughter to meet with [Mr.] Aresimowicz." *Id.* They allegedly "met in his office and [she] discussed the Arbitration proposal." *Id.* Ms. Gonzalez allegedly "asked [Mr. Aresimowicz about her old job and he [allegedly] said [that] he would help her," allegedly saying that "[e]veryone deserves a second chance." *Id.* Ms. Gonzalez's daughter allegedly "wanted a picture with [Mr. Aresimowicz]," so they "took a picture together." *Id.*

Ms. Gonzalez allegedly received an e-mail from Ms. Riberio "with instructions to go to Enfield, Connecticut for an interview." *Id.* ¶ 60. The "time slated for [Ms. Gonzalez] [allegedly] was 15 minutes long." *Id.* Ms. Riberio allegedly provided "[n]o mention of a physical ability test." *Id.* ¶ 11.

On May 15, 2019, Ms. Gonzalez allegedly "dressed for an interview" and "went to Enfield Correctional Institution." *Id.* When she arrived, she allegedly "was told it was a physical ability test," and was "[i]nstructed to go home, come back to take the test, otherwise, she would have to forget about it." *Id.* She allegedly "observed male candidates[] in sweatpants and workout clothes, yet she was never informed (treated differently than male candidates) [that] it was a physical ability test." *Id.* ¶ 61. She allegedly "went home to change," "grabb[ing] whatever she could to get back to Enfield as quickly as possible." *Id.* ¶ 62.

During the "COPAT" test, "an instructor [allegedly] was making inappropriate comments about [her] age, including an odd fixation on her Y[ale] University T-shirt." *Id.* ¶ 63. He allegedly "demand[ed] to know, 'Who goes to Y[ale]?'" *Id.* She allegedly replied that her son attended Yale. *Id.* He allegedly "mumbl[ed]," "Fuck this old ass bitch! We have guys over here we can pass." *Id.* Ms. Gonzalez allegedly was "faster than a male candidate, who was given multiple opportunities." *Id.*

Ms. Gonzalez allegedly was "pulled out of [] testing and sent to Human Resources, Emily Kennedy." *Id.* ¶ 64. Ms. Kennedy allegedly said, "You failed." *Id.* Ms. Gonzalez allegedly asked, "by how much time?" and Ms. Kennedy allegedly replied, "[b]y one itty, bitty second." *Id.*

Ms. Gonzalez allegedly asked Ms. Kennedy, "Why were the instructors allowing a man, they appeared to know, run the course 4 times more than I?" and also asked why she was only

tested "twice" while he was allowed multiple attempts. *Id.* Ms. Gonzalez allegedly "was confident she passed the COPAT test because she beat the man testing in the opposite lane." *Id.*

Ms. Kennedy allegedly said that "the instructors were concerned with your age and figured[] you wouldn't make it, so they failed you early." *Id.* Ms. Kennedy allegedly told Ms. Gonzalez that "We don't hire people your age and if we do it's an extreme rarity." *Id.* ¶ 65.

Mr. Aresimowicz allegedly "knew [that] [Ms. Gonzalez] was taking the COPAT test." *Id.* After the test, Ms. Gonzalez allegedly "immediately" "went to the Legislative Office Building and left [Mr.] Aresimowicz a note." *Id.* ¶¶ 17, 66.

On May 22, 2019, Ms. Gonzalez allegedly "met [Mr.] Aresimowicz at the Capitol." *Id.* ¶ 18. Mr. Aresimowicz allegedly told Ms. Gonzalez that he would "speak with [Commissioner] Cook to see if you can work at the Central office in Wethersfield." *Id.* Mr. Aresimowicz allegedly told Ms. Gonzalez he would "get back to [her]," but allegedly "never called." *Id.*

### B.    Procedural History

On May 27, 2020, Ms. Gonzalez filed a Complaint against the DOC Defendants. Compl., ECF No. 1 (May 27, 2020).

On July 24, 2020, Ms. Gonzalez filed an Amended Complaint against the DOC Defendants. Am. Compl.

On September 16, 2020, Ms. Gonzalez filed a motion to participate in electronic filing. Mot. by Self-Represented Litigant to Participate in Electronic Filing, ECF No. 24 (Sept. 16, 2020).

On October 16, 2020, the DOC Defendants moved to dismiss the Amended Complaint. DOC MTD.

On October 26, 2020, the DOC Defendants filed a Rule 26(f) report, noting that they had "reached out to [Ms. Gonzalez] . . . but had not heard back from her by the time of [] filing." Defs.' Planning Meeting Rep., ECF No. 21 (Oct. 26, 2020).

On October 29, 2020, the Court entered a scheduling order. Scheduling Order, ECF No. 22 (Oct. 29, 2020).

On November 6, 2020, Ms. Gonzalez moved for leave to file a Second Amended Complaint. Mot. to Amend.

That same day, Ms. Gonzalez filed a motion requesting waiver of PACER fees and various court fees. Mot. Requeseting Waiver of PACER Fees and Court Fees, ECF No. 28 (Nov. 6, 2020).

Also that same day, Ms. Gonzalez filed a motion opposing the Rule 26(f) report filed by Defendants and requested to file her own Rule 26(f) report. Mot. Recording Errors, ECF No. 29 (Nov. 6, 2020).

On November 9, 2020, the Court granted Ms. Gonzalez's motion to participate in electronic filing, noting that the motion had not been "separately docketed and thus did not draw the attention of the Court." Order, ECF No. 25 (Nov. 9, 2020). The Court in the same order directed the DOC Defendants to file the Notice to *Pro Se* Litigants required by the local rules. *Id.* That same day, the DOC Defendants filed the required notice. Notice, ECF No. 26 (Nov. 9, 2020).

Also that same day, Ms. Gonzalez filed another motion to participate in electronic filing. Second Request for Permission to E-File by the Pl. and Request to End Abuse of Discretion by the Ct., ECF No. 30 (Nov. 9, 2020).

On November 10, 2020, the Court denied Ms. Gonzalez's motion for leave to file a 26(f) report, but *sua sponte* ordered the parties to meet and confer in a planning meeting to discuss any necessary changes and to file an amended 26(f) report by December 11, 2020. Order, ECF No. 31 (Nov. 10, 2020).

That same day, the Court denied as moot Ms. Gonzalez's second request to participate in electronic filing, given the Court's prior order granting her e-filing access. Order, ECF No. 32 (Nov. 10, 2020).

On November 13, 2020, the Court denied without prejudice to renewal Ms. Gonzalez's motion for PACER and court fees. Order, ECF No. 34 (Nov. 13, 2020).

On November 27, 2020, the DOC Defendants objected to Ms. Gonzalez's motion for leave to file a Second Amended Complaint. DOC Obj. Mot. to Amend.

On November 30, 2020, Ms. Gonzalez filed a Second Amended Complaint on the docket. Second Am. Compl.

On December 4, 2020, the Court issued an order noting that "[o]n numerous occasions, Ms. Gonzalez has contacted various Court personnel in the Clerk's Office and Chambers to discuss various aspects of her case, including both procedural and substantive issues," and required that any future communication from Ms. Gonzalez "be submitted in writing and filed electronically, as Ms. Gonzalez has e-filing privileges." Order, ECF No. 37 (Dec. 4, 2020) (the "Filing Order").

On December 7, 2020, the DOC Defendants filed an amended Rule 26(f) report. Defs.' Am. Planning Meeting Rep., ECF No. 38 (Dec. 7, 2020).

On December 11, 2020, Ms. Gonzalez filed a Rule 26(f) report. Pl's Rule 26 Planning and Meeting Rep., ECF No. 39 (Dec. 11, 2020).

On December 14, 2020, Ms. Gonzalez filed a motion for "abuse of discretion by Connecticut district court against plaintiff," asking the Court to provide "evidence justifying [its] decision to BAN [her] from [f]iling her [m]otions in Court . . . ." or "remove" the Filing Order from the docket. Mot. Abuse Discretion at 5; Mem. in Supp. of Abuse of Discretion by Conn. Dist. Ct. Personnel, ECF No. 42-1 (Dec. 14, 2020).

On December 15, 2020, the DOC Defendants objected to Ms. Gonzalez's filing of the Second Amended Complaint without first obtaining leave from the Court. DOC Obj. Second Am. Compl.

That same day, the Court adopted a revised scheduling order based on the parties' 26(f) submissions. Scheduling Order, ECF No. 44 (Dec. 15, 2020).

On December 16, 2020, the Court noted that, "[i]n light of Ms. Gonzalez's continued e-mails to Clerk's Office staff," it would "modif[y]" its earlier order to direct Ms. Gonzalez, "to the extent she requires any relief or assistance from the Court to first file a motion on the docket requesting such relief or assistance directly with the Court . . . ." Order, ECF No. 45 (Dec. 16, 2020).

On December 22, 2020, Ms. Gonzalez moved to strike the DOC Defendants' objection to the filing of the Second Amended Complaint. Mot. to Strike Obj. to Second Am. Compl.

On December 23, 2020, the Court ordered that Ms. Gonzalez would be "required, from the date of this Order forward, to refrain from contacting staff of the Clerk of Court's office or anyone in the District of Connecticut by e-mail, telephone, or otherwise." Order, ECF No. 49 (Dec. 23, 2020).

On December 28, 2020, the State Defendants individually moved to dismiss the Second Amended Complaint. Aresimowicz MTD; Osten MTD.

On December 29, 2020, Ms. Gonzalez filed a "motion to show cause" pertaining to alleged "ongoing blocking of plaintiff from viewing transcript and all overnment website documents obstructing justice." Mot. to Show Cause at 1.

On January 12, 2021, the DOC Defendants objected to Ms. Gonzalez's motion to strike their objection to the filing of the Second Amended Complaint. Defs.' Obj. to Pl.'s Mot. to Strike Obj., ECF No. 57 (Jan. 12, 2021) ("DOC Defs.' Obj. to Mot. to Strike Obj. to Second Am. Compl.").

On January 21, 2021, Ms. Gonzalez objected to both State Defendants' motions to dismiss. Pl.'s Obj. to Def. Catherine Osten Mot. to Dismiss, ECF No. 58 (Jan. 21, 2021) ("Pl.'s Obj. to Osten MTD"); Pl.'s Obj. to Def. Joseph Aresimowicz Mot. to Dismiss, ECF No. 59 (Jan. 21, 2021) ("Pl.'s Obj. to Aresimowicz MTD").

On January 26, 2021, Ms. Gonzalez filed a discovery motion seeking various documents from Defendants. Mot. for Disc.

That same day, Ms. Gonzalez filed a "motion for injunctive relief," asking the Court to "end ongoing malfeasance between the [DOC] and [AFSCME] with a permanent injunction, ending the overriding State and Federal laws for favors, nepotism and/or cronyism, then hiding them in Arbitration undetected until now." Mot. for Injunction at 1, 6-7.

On January 28, 2021, the DOC Defendants filed a motion to stay discovery pending the Court's decisions on the pending motions to dismiss. Mot. to Stay Disc. Pending This Court's Decisions on Pending Mots., ECF No. 62 (Jan. 28, 2021).

Also that same day, Ms. Gonzalez filed a memorandum in support of her motion for injunctive relief. Pl.'s Mem. of L. in Supp. of a Permanent Inj., ECF No. 63 (Jan. 29, 2021).

On February 1, 2021, Ms. Gonzalez moved to amend/correct her memorandum in support of her motion for injunctive relief to "correct a couple minor typos, in addition to clarifying information" in the memorandum. Mot. to Amend Mot. for Injunction at 1.

That same day, Ms. Gonzalez filed an objection to the DOC Defendants' objection to Ms. Gonzalez's motion to strike their objection to the filing of the Second Amended Complaint. Pl.'s Obj. to Def.'s Obj. to Mot. to Strike Def.'s Obj., ECF No. 66 (Feb. 1, 2021) ("Pl.'s Obj. to DOC Defs.' Obj.").

On February 4, 2021, the State Defendants individually filed replies to Ms. Gonzalez's objections to their motions to dismiss. Def. Aresimowicz's Reply to Pl.'s Obj. to Def.'s Mot. to Dismiss, ECF No. 68 (Feb. 4, 2021) ("Aresimowicz MTD Reply"); Def. Osten's Reply to Pl.'s Obj. to Def.'s Mot. to Dismiss, ECF No. 69 (Feb. 4, 2021) ("Osten MTD Reply").

That same day, the Court granted the motion to stay discovery until after it decided the pending motions to dismiss, and *sua sponte* stayed all responses to any other pending motions until resolution of the motions to dismiss. Order, ECF No. 70 (Feb. 4, 2020) (the "Stay Order"). The Court also noted that despite its earlier orders regarding Ms. Gonzalez's communication with Court personnel, "Ms. Gonzalez ha[d] continued to contact Court personnel regarding her case," and reminded Ms. Gonzalez of its previous orders. *Id.*

On February 6, 2021, Ms. Gonzalez moved to strike the State Defendants' replies to her objections to their motions to dismiss. Mot. to Strike Aresimowicz Reply; Mot. to Strike Osten Reply.

That same day, Ms. Gonzalez objected to the motion to stay. Obj. to Def.'s Mot. to Stay, ECF No. 73 (Feb. 6, 2021); Pl.'s Mem. in Supp. of Her Obj. to Def.'s Mot. to Stay, ECF No. 73-1 (Feb. 6, 2021).

Also that same day, Ms. Gonzalez moved for default judgment against the DOC Defendants. Mot. for Default J.

Also that same day, Ms. Gonzalez filed a motion to "record political malfeasance by the [Court]." Mot. Recording Malfeasance at 1.

On February 8, 2021, in light of the Stay Order and the motions subsequently filed by Ms. Gonzalez, the Court *sua sponte* stayed any responses to any motions filed since the Stay Order, and also "noted Ms. Gonzalez's objection to the stay." Order, ECF No. 77 (Feb. 8, 2021).

On March 29, 2021, Ms. Gonzalez filed two motions requesting an update on the status of the case. First Mot. for Status; Second Mot. for Status.

On April 28, 2021, the Court held a hearing by videoconference on the pending motions. Min. Entry, ECF No. 83 (Apr. 28, 2021). As the Court noted, counsel for Defendants were present, but Plaintiff did not appear. *Id.* The Court appeared briefly and noted for the record that Plaintiff did not appear, and waited for 17 minutes before excusing Defendants. *Id.*

That same day, Ms. Gonzalez filed a motion referencing alleged "abuse of discretion by Connecticut district court," alleging that the Court "[b]locked" her "from joining" the videoconference motion hearing and reiterating her "concerns and frustration with her constantly being [b]locked from a Government (PACER) website." Mot., ECF No. 82 (Apr. 28, 2021) (emphasis omitted). On April 29, 2021, the Court denied the motion, noting that to the extent the motion requested relief related to the April 28, 2021 motion hearing, "notices containing the information about how to access the Zoom meeting were (1) posted on the docket; (2) mailed to Ms. Gonzalez to the address on file with the Court, approximately nine days before the hearing; and (3) sent by e-mail to Ms. Gonzalez, and all counsel, the morning of the hearing." *Id.* (citations omitted). The Court noted that to the extent the motion pertained to Ms. Gonzalez's

alleged issues with the PACER system, "the Court already ha[d] addressed these issues in an earlier Order . . ., and it appears that, given Ms. Gonzalez's recent filings on the docket, any alleged e-filing issues ha[d] been resolved." *Id.*

Also on April 29, 2021, Ms. Gonzalez filed another motion referring to alleged  "abuse of discretion" by the Court. Mot., ECF No. 84 (Apr. 29, 2021). On April 30, 2021, the Court denied the motion as moot in light of its prior order. Order, ECF No. 85 (Apr. 30, 2021).

## II.    STANDARD OF REVIEW

### A.  Motion to Dismiss

#### i.    Rule 12(b)(1)

In every case, a court must determine whether it has subject-matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction under [Rule] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R. Civ. P. 12(b)(1). In evaluating a motion under Federal Rule of Civil Procedure 12(b)(1), the Court "must accept as true all material financial allegations in the complaint but need not draw inferences favorable to the party asserting jurisdiction." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).

The burden to prove subject matter jurisdiction generally falls on the plaintiff, but where a "defendant official or government entity asserts the Eleventh Amendment as the basis of the 12(b)(1) motion, the burden falls to that entity to prove its entitlement to dismissal on the grounds of immunity from suit." *Paw Iow v. Dep't of Emergency Servs. & Pub. Prot.*, 172 F. Supp. 3d 568, 573 (D. Conn. 2016) (internal quotation marks omitted).

### ii.     Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), a court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. A court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss

for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.")).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

### iii.    Res Judicata

The doctrine of *res judicata* prevents a claim from being relitigated if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Soules v. Conn. Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 55 (2d Cir. 2018) (internal quotation marks omitted).

In cases involving prior litigation between or among the parties, a court must determine if it is precluded from adjudicating some or all of the claims because of previous rulings on the merits of those claims. The doctrine of *res judicata*, or claim preclusion, generally dictates that "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.5 (1979). The related doctrine of "[c]ollateral estoppel bars a party from raising an issue of law or fact in a second suit that the party had a full and fair opportunity to litigate . . . in [a] prior proceeding and where the decision of the issue was necessary to support a valid and final judgment on the merits in the first action." *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998) (second and third alterations in original) (internal citations and quotations

19

omitted). "The doctrines of *res judicata* and collateral estoppel protect 'litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation.'" *Id.* at 644 (alteration in original) (*quoting Parklane Hosiery Co.*, 439 U.S. at 326).

The party asserting the defense of *res judicata* bears the burden of proving that the prior action resulted in a ruling of the claim on its merits, and that *res judicata* applies to the current case. *Ventres v. Goodspeed Airport, LLC*, 301 Conn. 194 (2011); *see Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 321–22 (S.D.N.Y.) ("In order to assert an affirmative defense of claim preclusion, a party must show that an earlier decision was: (1) a final judgment on the merits made by a court of competent jurisdiction; (2) in a case involving the same parties or their privies; and (3) involving the same cause of action.").

### B.  Motion to Amend

Under Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(2). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

The district court has broad discretion to decide a motion to amend. *See Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998). However, if a court chooses to deny leave to amend, it must give some "justifying reason" for doing so. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons for denying leave to amend

include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Id.*; *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss [under] Fed. R. Civ. P. 12(b)(6)"); *Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011) ("While mere delay, absent a showing of bad faith or undue prejudice, is not enough for a district court to deny leave to amend, the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." (internal quotation marks omitted)).

### C. Motion to Strike

Under Federal Rule of Civil Procedure 12(f), "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike under Ruel 12(f) "are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute." *Corr. Officers Benevolent Ass'n of Rockland Cty. v. Kralik*, 226 F.r.D. 175, 177 (S.D.N.Y. 2005); *see also Gierlinger v. Town of Brant*, No. 13-cv-00370 AM, 2015 WL 3441125, at *1 (W.D.N.Y. May 28, 2015) ("Because striking a [part] of a pleading is a drastic remedy[,] motions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted." (internal quotation marks omitted)).

"Whether to grant or deny a motion to strike si vested in the trial court's sound discretion." *Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 15 (D. Conn. 2013)).

## III.   DISCUSSION

The DOC Defendants have moved to dismiss the Amended Complaint for lack of subject matter jurisdiction and for failure to state a claim. *See* DOC MTD.

The State Defendants have moved to dismiss the Second Amended Complaint for lack of subject matter jurisdiction, for failure to state a claim, and under the doctrine of *res judicata*. *See* Aresimowicz MTD; Osten MTD.

Ms. Gonzalez has moved for leave to amend the Amended Complaint, *see* Mot. to Amend, and has filed the Second Amended Complaint on the docket, *see* Second Am. Compl.

The Court will address these, and the various other motions, in turn.

### A.   The DOC Defendants' Motion to Dismiss

The DOC Defendants have moved to dismiss Ms. Gonzalez's Amended Complaint on several grounds. *See* DOC MTD. Specifically, the DOC Defendants move to dismiss Count One (gender discrimination), Count Two (age discrimination), Count Three (retaliation) and Count Five (Fourteenth Amendment equal protection) for failure to state a claim and on qualified immunity grounds, and move to dismiss Count Four (Intentional Infliction of Emotional Distress ("IIED")) for failure to state a claim and on statutory immunity grounds. *Id.* at 1-2.

Each of Ms. Gonzalez's claims arise out of her 2019 application for re-employment for a position at the Department of Correction.[3] *See* Am. Compl. ¶¶ 55-79. Specifically, Ms. Gonzalez's claims relate to the administration of a "COPAT test" allegedly given to Ms. Gonzalez on May 15, 2019. *Id.* ¶¶ 10-12.

_____

[3] Though Ms. Gonzalez describes events that allegedly occurred from her earlier employment with the DOC, allegedly from 1996 to 2006, *see* Am. Compl. ¶ 19, and notes that these events are "paramount to understand current discrimination," *see id.* at 9, Ms. Gonzalez does not specifically relate these events to the counts set forth against the DOC Defendants in her Amended Complaint arising from her 2019 application for re-employment, *see id.* ¶¶ 75-79.

With respect to gender discrimination, Ms. Gonzalez claims that the alleged comments made by the instructor during the COPAT test make clear that "he preferred male candidates to females," *id.* ¶ 75. With respect to age discrimination, Ms. Gonzalez alleges that Ms. Kennedy "discriminated against [her] by boldly mentioning her age was an issue for employment with the [DOC]," and alleges that Ms. Kennedy informed her that "the instructors were concerned about her age because they were holding her drivers license the entire time." *Id.* ¶ 76. She also argues that the instructor's alleged comments "mak[e] . . . clear" that "her [a]ge was an obstacle for employment." *Id.*

With respect to retaliation, Ms. Gonzalez argues that the DOC "discriminated against the plaintiff, humiliated her, and told her she failed the physical ability test by one itty bitty second to torment her," allegedly in retaliation for her "public testimony at the Legislative ofice building which exposed [Mr.] Aresimowicz, AFSCME and the [DOC] for ongoing malfeassance toward women." *Id.* ¶ 77.

With respect to Intentional Infliction of Emotional Distress, Ms. Gonzalez alleges that "[t]he DOC continues to inflict emotional distress, pain and suffering via overt discrimination," and that she"struggles emotionally when reliving her trauma because she starts to regress and have flashbacks." *Id.* ¶ 78.

Finally, with respect to the Fourteenth Amendment, she argues that "[t]he Defendants . . . violated procedural and substantive law at CHRO"[4]; and the DOC "denied [her] equal protection . . . in the hiring process on May 15, 2019." *Id.* ¶ 79.

---

[4] Ms. Gonzalez's Amended Complaint does not make clear whether she brought the instant discrimination claim, relating to her May 15, 2019 alleged failure to hire by the DOC, to the CHRO, or whether the references to the CHRO refer to her prior employment with the DOC.

The DOC Defendants argue that any claims against the DOC, Commissioner Quiros and Ms. Kennedy in their official capacities are barred by Eleventh Amendment immunity; that she has failed to state a claim for gender or age discrimination, retaliation, Fourteenth Amendment violations, or IIED as to all DOC Defendants; and that Commissioner Quiros and Ms. Kennedy are entitled to qualified immunity. *See* DOC MTD Mem.

The Court will address each issue in turn.

### i.    Eleventh Amendment Immunity

"The Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest[.]" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (internal quotation marks omitted); *Alabama v. Pugh*, 438 U.S. 781, 781 (1978) ("[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against State and their agencies."). The Eleventh Amendment immunity therefore "protects [from suit] state officials sued for damages in their official capacity." *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)). And "a State is not a 'person' against whom a § 1983 claim for money damages might be asserted." *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)).

Eleventh Amendment immunity may be waived through consent by the state or the unequivocal expression by Congress to abrogate a state's immunity. *Halderman*, 465 U.S. at 99. In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court recognized another limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155-56; *In re Dairy Mart Convenience Stores, Inc.*, 411

F.3d 367, 371 (2d Cir. 2005). "[A] plaintiff may sue a state official acting in his official capacity—not[]withstanding the Eleventh Amendment—for prospective injunctive relief from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (internal quotation marks omitted). Eleventh Amendment immunity may also be waived by Congress, *see Bd. of Tr. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001), or by the state, *see College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999).

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotation marks omitted); *see also State Empls. Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 96 (2d Cir. 2007) ("We are specifically required by *Ex parte Young* to examine whether there exists an ongoing violation of federal law." (emphasis omitted)); *Myers v. Semple*, No. 3:18-cv-505, 2018 WL 3553336, at *3 (D. Conn. July 23, 2018) ("[T]he *Ex parte Young* exception does not apply to declaratory relief against state officials in their official capacities when the relief relates only to past conduct and there is no ongoing violation of federal law.").

The DOC Defendants argue that any official-capacity claims against the DOC, Commissioner Quiros, and Ms. Kennedy are all barred by the Eleventh Amendment. DOC MTD Mem. at 7-9.

The Court agrees.

None of the exceptions to Eleventh Amendment immunity apply, as the DOC Defendants have not waived their immunity to suit, nor has Congress unequivocally expressed abrogation of this immunity, and Ms. Gonzalez does not set forth an "ongoing violation of federal law" such

that relief would be considered prospective. *Verizon Md. Inc.*, 535 U.S. at 645. To the contrary, Ms. Gonzalez's Amended Complaint seeks relief for an alleged failure-to-hire that occurred nearly two years ago, *see* Am. Compl., and sets forth no cognizable ongoing violations of federal law that could render any relief sought to be "prospective" in nature.[5]

Therefore, to the extent Ms. Gonzalez seeks to sue the "DOC" as an entity, these claims are barred because "neither a state nor its officials acting in their official capacities are 'persons' [subject to suit] under § 1983," *Will*, 491 U.S. at 71, and to the extent Ms. Gonzalez seeks to sue Commissioner Quiros and Ms. Kennedy in their official capacities, these claims also are barred, because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and "[a]s such, it is no different from a suit against the State itself," *id.*

Accordingly, any claims against the Department of Correction will be denied, and to the extent Ms. Gonzalez seeks to sue Commissioner Quiros and Ms. Kennedy in their official capacities, these claims too will be denied.

### ii.    Discrimination and Retaliation Claims Under § 1983

"In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law." *Ciambrello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) (citing *Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)). When employment discrimination claims are asserted under § 1983, based on

---

[5] To the extent Ms. Gonzalez's Amended Complaint mentions general allegations of discrimination at the DOC, *see, e.g.*, Am. Compl. ¶ 69 (discussing an alleged "pervasive pattern of discrimination toward women who file sexual harassment complaints or any comp[laint]"); broad allegations of "collusion" between the AFSCME and the DOC, *see id.*; or other allegedly patterns of "misconduct" at the DOC or AFSCME, *see, e.g., id.* ¶ 53 (discussing allegedly "egregious misconduct cases" unrelated to Ms. Gonzalez's that were purportedly "ignored" by the DOC due to "secret deals" between the DOC and AFSCME), Ms. Gonzalez does not tie any of these generalized allegations to her claims against the DOC Defendants specifically pertaining to their alleged failure to hire her in May 2019, nor is it clear to the Court how these allegations bear on or are related to this alleged discriminatory action.

alleged equal protection or due process violations, they are generally analyzed under the same

initial standard as Title VII claims to determine whether they state a *prima facie* case of

employment discrimination: the *McDonnell-Douglas* burden-shifting framework. *See Patterson*

*v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) ("Most of the core substantive

standards that apply to claims of discriminatory conduct in violation of Title VII are also

applicable to claims of dsicrimination in employment in violation of § 1981 or the Equal

Protection Clause . . . .") (collecting cases); *Sorlucco v. N.Y.C. Police Dep't*, 888 F.2d 4, 7 (2d

Cir. 1989) ("The Supreme Court has outlined a three-step analysis of factual issues in Title VII

claims. By analogy, the same analysis applies to claims under section 1983.") (citing *Tex. Dep't*

*of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-56 (1981), *McDonnell-Douglas Corp. v. Green*,

411 U.S. 792, 802-05 (1973), and collecting cases)).

   As a result, to state a claim for employment discrimination under § 1983, a plaintiff must

allege (1) that she was a member of a protected class; (2) that she was qualified for the position;

(3) that she was subject to an adverse employment action; and (4) that the adverse action

occurred under circumstances that give rise to an inference of discrimination. *See Leibowitz v.*

*Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009), *superseded by statute on other grounds*.

Specifically, "[i]n the failure-to-hire context, a plaintiff makes out his *prima facie* case under

Title VII by demonstrating that '(1) he is a member of a protected class, (2) he was qualified for

the job for which he applied, (3) he was denied the job, and (4) the denial occurred under

circumstances that give rise to an inference of invidious discrimination.'" *Singh v. Excel Security*

*Corp.*, No. 14 Civ. 10111 (PAC), 2021 WL 1199469, at *5 (quoting *Vivenzio v. City of Syracuse*,

611 F.3d 98, 106 (2d Cir. 2010)).

The DOC Defendants argue that Ms. Gonzalez has failed to state a claim as to either gender or age discrimination or retaliation. In the DOC Defendants' view, these claims all fail because Ms. Gonzalez "ha[d] no constitutionally protected property right or interest in prospective employment with defendant DOC," and "[t]here can be no violation of a constitutional right or protection that does not exist." DOC MTD Mem. at 11-12; *see also id.* at 12-14 (applying this analysis to the age discrimination claim); *id.* at 14-15 (applying this analysis to the retaliation claim). The DOC Defendants also argue that Ms. Gonzalez "did not and cannot allege that deefendant Quiros was personally involved in the Department of Correction's decision to not hire her," and "[n]either defendant Quiros nor defendant Kennedy were the proximate cause of plaintiff not being hired by the [DOC]." *Id.* at 17. Finally, the DOC Defendants argue that both Commissioner Quiros and Ms. Kennedy are entitled to qualified immunity. *Id.* at 21-23.

The Court agrees in part.

First, to the extent Ms. Gonzalez's Fourteenth Amendment claim may be construed as a violation of due process, that claim cannot survive. "In order to prevail on a § 1983 claim for violation of the procedural due process rights guaranteed by the Fourteenth Amendment, the plaintiff must show (1) that he possessed a protected liberty or property interest; and (2) that he was deprived of that interest without due process." *Arrocha v. City Univ. of N.Y.*, 878 F. Supp. 2d 364, 372 (E.D.N.Y. 2012), *aff'd*, 523 F. App'x 66 (2d Cir. 2013). Because "[a] job applicant . . . has no property interest in the position for which she applies," *Almontaser v. N.Y.C. Dep't of Educ.*, No. 07-cv-10444 (SHS), 2009 WL 2762699, at *4 (S.D.N.Y. Sept. 1, 2009), and a "[l]iberty interest does not encompass . . . the right to a particular job," *Shkilnyj v. Erie Cmty Coll.*, No. 15-CV-905-FPG, 2018 WL 1471403, at *4 (W.D.N.Y. Mar. 26, 2018), Ms. Gonzalez

has failed to allege a constitutionally protected property or liberty interest in an employment position with the DOC.[6]

As to the gender and age discrimination and Fourteenth Amendment equal protection claims, Ms. Gonzalez satisfies the first prong of the *prima facie* test, as she has sufficiently alleged that she is a member of a protected class. *See* Am. Compl. ¶¶ 65-76 (discussing alleged discrimination based on her gender and age). As to the second, third and fourth prongs, whether Ms. Gonzalez was qualified for the job, was ultimately denied a job, and such a denial occurred under circumstances giving rise to invidious discrimination, *see Singh*, 2021 WL 1199469, at *5, Ms. Gonzalez's Amended Complaint fails. The Amended Complaint does not identify the specific position at the DOC to which she applied, the qualifications of any such position, or Ms. Gonzalez's qualifications relative to the qualifications of any such position, nor does it make clear the relationship between the COPAT test and the ultimate job to which she applied.

In sum, Ms. Gonzalez's Amended Complaint alleges that she spoke generally about employment with a human resources manager at the DOC and was asked to participate in a job interview, *see* Am. Compl. ¶¶ 58-60; allegedly was told at the interview that it would be a physical ability test, *id.* ¶ 60; during the test, an instructor allegedly stated, "Fuck this old ass bitch! We have guys over here we can pass," and Ms. Gonzalez was "faster than a male candidate, who was given multiple opportunities," *id.* ¶ 63; and she allegedly later was "pulled out of the testing and sent to Human Resources," where Ms. Kennedy allegedly said she "failed," by "one itty, bitty second," and allegedly told Ms. Gonzalez that "the instructors were concerned with your age and figured you wouldn't make it, so they failed you early," as well as that the DOC "do[es]n't hire people [her] age and if they do it's an extreme rarity," *id.* ¶ 64.

---

[6] The Court discussed this issue in further detail in its earlier ruling in Ms. Gonzalez's companion case. *See Gonzalez*, 2020 WL 6263549.

While the Second Circuit has observed that "the impermissible bias of a single individual at any stage of the promoting process may taint the ultimate employment decision in violation of Title VII," *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 450 (2d Cir. 1999), it also has held that where "there is no evidence that the ultimate decision maker harbored retaliatory animus, the individual who does harbor such animus must have 'played a meaningful role in the [hiring] process,'" *Lin v. N.Y. State Dep't of Labor*, No. 1:14-CV-0771 (LEK-DJS), 2017 WL 435811, at *9 (N.D.N.Y. Feb. 1, 2017) (alteration in original) (quoting *Bickerstaff*, 196 F.3d at 450). As a result, Ms. Gonzalez "must show not only that [Commissioner Quiros and Ms. Kennedy] harbored retaliatory animus, but that [they] played a significant part in the process that led to the decision not to hire her." *Id.*

Ms. Gonzalez's Amended Complaint not only fails to identify the job to which she applied, the qualifications needed to fill that role, and her qualifications in comparison to those requirements, but also fails to identify the ultimate decision-maker responsible for her alleged failure to be hired by the DOC.

While she alleges that the unnamed instructor(s) made allegedly discriminatory comments, *see* Am. Compl. ¶ 63, allowed men to run the course more times than her, and felt that she could not pass due to her age, *see id.* ¶¶ 64-65, as well as that one instructor allegedly "made it clear he preferred male candidates to females," *id.* ¶ 75, and allegedly "failed [Ms. Gonzalez] early" in the "COPAT" test, she does not allege which, if any, of the instructors were decision-makers in the ultimate failure to hire. Nor does she name any of the instructors as parties to her Amended Complaint.

Similarly, though Ms. Gonzalez alleges that Ms. Kennedy "informed the plaintiff the instructors felt she could not pass because of her age" and allegedly told Ms. Gonzalez that the

DOC "[did not] hire people [her] age," Am. Compl. ¶ 65, she does not allege that Ms. Kennedy

was the ultimate decision-maker in the alleged failure to hire, nor does she set forth any

influence Ms. Kennedy purportedly had on the unnamed decision-maker. *See Lin*, 2017 WL

435811, at *9 (observing that "[w]hen courts in this [C]ircuit hold that someone other than the

ultimate deicsion maker taint[ed] the ultimate employment decision in violation of Title VII,

there is typically some concrete evidence (or a plausible allegation) that the ultimate decision

maker, in issuing the challenged employment decision, relied on statements made by the person

harboring retaliatory or discriminatory animus" and noting that "in cases where such evidence is

lacking, there is usually some indication that the person harboring retaliatory animus had a

singular influence or dominated the ultimate decision maker" (third alteration in original)

(internal quotation marks omitted)) (citing *Geras v. Hempstead Union Free Sch. Dist.*, 149 F.

Supp. 3d 300, 328 (E.D.N.Y. 2015)). Ms. Gonzalez similarly fails to explain whether, even if

Commissioner Quiros harbored discriminatory intent toward her, he either was the ultimate

decision maker in her failure to hire, or exercised "influence" over the decision maker.[7] *Lin*,

2018 WL 435811 at *9.

    Finally, the Amended Complaint does not explain how Ms. Gonzalez's results on the

COPAT test related to the position to which she applied, such as whether a passing score on the

exam is a necessary prerequisite to DOC employment, or any of the job's other requirements in

addition to passing the COPAT test, if so required. Absent this information, the Court cannot

---

[7] To the extent Ms. Gonzalez's Amended Complaint may be construed as an attempt to sue Commissioner Quiros on the basis of supervisory liability for a subordinate's conduct, this claim too fails, as the Second Circuit has held that in a § 1983 action, "there is no special rule for supervisory liability," and "[i]nstead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676) (also noting that the § 1983 violation "must be established against the supervisory official directly"). Ms. Gonzalez has not set forth any allegations that Commissioner Quiros knew of her application for employment, acted to prevent her from being hired, or otherwise violated any constitutional provision applicable to her failure to hire.

determine, based on Ms. Gonzalez's allegations pertaining to the COPAT test, whether Ms. Gonzalez was denied a job, was qualified for the job, or whether any failure to hire was motivated by discriminatory animus. *See Singh*, 2021 WL 1199469, at *5.

Unless and until Ms. Gonzalez alleges further information about the nature of the job to which she applied, including the qualifications of the position; the individual or individuals who allegedly acted as decision-maker(s) in the alleged failure to hire; and any Defendant's alleged involvement in any alleged failure to hire, Ms. Gonzalez has not sufficiently set forth a *prima facie* case of either gender or age discrimination, and these claims will be dismissed without prejudice to renewal.[8]

As to Ms. Gonzalez's claim of retaliation, or that "[t]he Department of Correction [allegedly] discriminated against the plaintiff, humiliated her, and told her she failed the physical ability test by one itty bitty second to torment her" based on her prior testimony before the state legislature, *see* Am. Compl. ¶ 77, the Court similarly cannot, without further information on the individuals allegedly responsible for the alleged failure to hire, evaluate whether any such failure constituted retaliatory action. *See Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) ("To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially

---

[8] Ms. Gonzalez has not set forth a Title VII claim. Because Ms. Gonzalez is a *pro se* plaintiff, the Court construes the Amended Complaint in the light most favorable to her, *see Sykes*, 723 F.3d at 403, and notes that she may have a cognizable claim under Title VII if she has exhausted her administrative remedies as required under the law. Under Title VII, "a plaintiff can sue in federal court only after filing timely charges with the EEOC." *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 213 (2d Cir. 2006). The complainant has 180 days from the adverse employment action to file charges with the EEOC. 42 U.S.C. § 2000e-5(e)(1). Then, "the complainant must await dismissal of the administrative charge (or a failure to act)." *McPherson*, 457 F.3d at 214. "A private Title VII plaintiff must also first receive a 'right-to-sue' letter from the EEOC," *id.* at 213, and after receiving that letter, has ninety days to file a civil action in federal court. 42 U.S.C. § 2000e-5(f)(1). To the extent Ms. Gonzalez can demonstrate that she has acted in accordance with Title VII's procedural requirements, she may so allege in an Amended Complaint.

caused by his exercise of that right; and (3) the defendant's actions caused him some injury.").

Accordingly, this claim also will be dismissed without prejudice to renewal.

For the same reasons, as to Ms. Gonzalez's Fourteenth Amendment equal protection

claim, or that "[t]he Department of Correction [allegedly] denied the plaintiff equal protection of

the law, in the hiring process on May 15, 2019" and "instead . . . discriminated agianst her for

her AGE, GENDER," Am. Compl. ¶ 79, the Court similarly cannot, without further information

as described above, evaluate whether any alleged failure to hire constituted a Fourteenth

Amendment violation. Accordingly, this claim also will be dismissed without prejudice to

renewal.

The Court therefore need not, and does not, address the DOC Defendants' qualified

immunity arguments.

### iii.    Intentional Infliction of Emotional Distress

Having determined that Ms. Gonzalez's federal claims should be dismissed, the Court must

then determine whether it should exercise supplemental jurisdiction over her remaining state law

claim.

Under 28 U.S.C. § 1367(a),

> [I]n any civil action of which the district courts have original
> jurisdiction, the district courts shall have supplemental jurisdiction over
> all other claims that are so related to claims in the action within such
> original jurisdiction that they form part of the same case or controversy
> under Article III of the United States Constitution.

"[D]istrict courts may decline to exercise supplemental jurisdiction over a claim," however, if "the

district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3).

Supplemental or pendent jurisdiction is a matter of discretion, not of right. *See Gibbs*, 383

U.S. at 726. Where all federal claims have been dismissed before a trial, state claims generally

should be dismissed without prejudice and left for resolution by the state courts. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").

"Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity." *Kolari*, 455 F.3d at 122 (internal quotation marks omitted); *see also Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 83 (2d Cir. 2018) ("If one of the § 1367(c) categories applies, the district court may then undertake the discretionary inquiry of whether to exercise supplemental jurisdiction . . . . '[A] district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity.'" (quoting *Jones v. Ford Motor Credit Co.*, 385 F.3d 205, 214 (2d Cir. 2004)).

"In weighing these factors, the district court is aided by the Supreme Court's additional guidance in *Cohill* that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Kolari*, 455 F.3d at 122 (alteration in original) (quoting *Cohill*, 484 U.S. at 350); *see also Catzin*, 899 F.3d at 83 ("Under this prong, in a great many cases, the evaluation will usually result in the dismissal of the state-law claims.")

But as the Second Circuit recently emphasized, "[t]he principle that the elimination of federal-law claims prior to trial generally points to declining to exercise supplemental jurisdiction

'in the usual case' clearly does not mean that the balance of factors always points that way." *Catzin*, 899 F.3d at 86. Thus, "[w]hen §1367(c)(3) applies, the district court must still meaningfully balance the supplemental jurisdiction factors" of judicial economy, convenience, fairness, and comity before declining to exercise supplemental jurisdiction. *Id.*

The balance of factors here weighs in favor of declining to exercise supplemental jurisdiction. The Court finds that principles of comity suggest that Connecticut courts are more suited to determine the viability of Ms. Gonzalez's intentional infliction of emotional distress claim, which involves Connecticut law. Her "claims may be vindicated, if at all, in state court under traditional state law principles." *Giammatteo v. Newton*, 452 F. App'x 24, 30 (2d Cir. 2011) (citing *Baker v. McCollan*, 443 U.S. 137, 146 (1979)).

Accordingly, the Court declines to exercise supplemental jurisdiction and will dismiss Ms. Gonzalez's intentional infliction of emotional distress claim without prejudice as a result.

For the above reasons, the DOC Defendants' motion to dismiss will be **GRANTED**. All claims against the Department of Correction and against Commissioner Quiros and Ms. Kennedy in their official capacities will be dismissed with prejudice. All claims against Commissioner Quiros and Ms. Kennedy in their individual capacities will be dismissed without prejudice to filing an amended complaint, by **June 25, 2021**, to correct the deficiencies identified in this Order and Ruling.

### B.  Motion to Amend

Ms. Gonzalez's proposed Second Amended Complaint seeks leave to "add a spoliation claim, cause of action, a chance to correct errors, making her pleading clear and concise by cleaning it up." Mot. to Amend at 2. Additionally, though Ms. Gonzalez does not specifically state this in her motion to amend, the Second Amended Complaint filed on the docket also seeks

to add Senator Osten and Mr. Aresimowicz as defendants "[i]n order for this complaint to make complete sense." Second Am. Compl. ¶ 7.

In addition to the five counts set forth in the Amended Complaint, Ms. Gonzalez's proposed Second Amended Complaint seeks to add one count of freedom of speech violations against both the DOC and State Defendants, *id.* at 60 ¶ 106; one count of retaliation against "the Defendants, the Department of Correction, and AFSCME, Joe Aresimowicz," *id.* at 60-61 ¶ 114; one count of intentional infliction of emotional distress against "the defendants in collusion with one another," *id.* at 62 ¶ 116; and one count of Fourteenth Amendment violations against all Defendants, *id.* at 63 ¶ 117. Ms. Gonzalez alleges that Mr. Aresimowicz engaged in "frenzied spoliation" after the April 16, 2018 public testimony discussed at length in the Court's opinion granting Defendants' motion to dismiss in Ms. Gonzalez's companion case, *Gonzalez v. AFSCME, et al.*, 3:20-cv-00505 (VAB), 2020 WL 6263549 (D. Conn. Oct. 23, 2020). *See* Second Am. Compl. at 46 ¶ 79, *see also id.* at 60 ¶ 106 (alleging that Mr. Aresimowicz "used his political position and spoliation to violate the plaintiff's free speech").

Ms. Gonzalez, however, may not amend the Amended Complaint as of right because she has previously amended her Complaint. *See* Am. Compl; *see also* Fed. R. Civ. P. 15(a)(1) ("A party may amend its pleadings once as a matter of course within (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required 21 days after service of a responsive pleading or 21 days after service of a motion under 12(b), (e), or (f), whichever is earlier.").

Ms. Gonzalez argues that the Court nonetheless should grant leave to amend because allowing amendment "would serve justice and promote judicial efficiency," and "there would be no substantial or undue prejudice, bad faith, undue delay, or futility" if leave to amend were

granted. Mot. to Amend. at 3. Specifically, she argues that leave is warranted because: (1) "the defendants arbitrarily filed a Rule 26 Report and took over the case without the plaintiff's knowledge because she was excluded from receiving CM ECF emails, even after being approved," Mot. to Amend at 1-2; (2) the leave "will not impact the dates chosen for trial in 2022," *id.* at 2; and (3) "defendants have a long history and pattern for dragging cases intentionally, specifically when the plaintiff is appealing a dismissal" in her companion case, *id.*

The DOC Defendants argue that leave should not be granted because the proposed amendment is futile. DOC Obj. Mot. to Amend at 2. The DOC Defendants argue that Ms. Gonzalez has "failed to allege that there is newly discovered evidence that has come to her attention that was not available to her when she filed the . . . Amended Complaint," *id.* at 3, and that with respect to her proffered spoliation claim, she has "fail[ed] to allege any factual predicate for a spoliation claim," but rather, has "merely recit[ed] the same allegations" from the Amended Complaint. *Id.* In the DOC Defendants' view, Ms. Gonzalez's proposed amended pleading could not withstand a motion to dismiss under Rule 12(b)(6) because she cannot establish a *prima facie* case for spoliation. *Id.* at 4. The DOC Defendants also argue that they did not arbitrarily file their 26(f) report and, even if they had, this is "not a valid basis" to grant leave to amend. *Id.* at 5-6.

The DOC Defendants also object specifically to Ms. Gonzalez's filing of the Second Amended Complaint on the docket without obtaining leave from the Court. *See* DOC Obj. Second Am. Compl. As the DOC Defendants argue, the Second Amended Complaint contains the "same" legal claims as those asserted in the Amended Complaint "except that it appears that Plaintiff amends her . . . Amended Complaint to add a claim of a violation of her constitutional

right . . . under the First Amendment, a claim that was already dismissed," and "to also add additional Defendants from this same case previously dismissed." *Id.* at 3-4.

Ms. Gonzalez has moved to strike the DOC Defendants' objection, arguing that the proposed Second Amended Complaint adds "300 pages of added self-authenticating evidence, exposing Public Corruption by the [DOC] in collusion with [AFSCME]." Mot. to Strike Obj. to Second Am. Compl. at 8. She argues that counsel for the DOC is committing "[f]raud on the Court" by "attempting to hide the evidence (Department of Correction – ARREST RECORDS) from the public scrutiny." *Id.* at 12-13. In Ms. Gonzalez's view, adding Senator Osten and Mr. Aresimowicz "makes perfect sense, explaining the ongoing overt malfeasance and collusion between the [DOC], the defendants and [AFSCME]." *Id.* at 14. She also argues that her basis for moving to strike is "because the defendant[]s missed the deadline to object." *Id.* at 3.

As an initial matter, Ms. Gonzalez's motion to strike the DOC Defendants' objection to the filing of the Second Amended Complaint will be denied. The DOC Defendants' timely objection to Ms. Gonzalez's filing of the Second Amended Complaint, so filed without first obtaining leave from the Court, is not only not a "pleading" as contemplated by the Federal Rules, *see* Fed. R. Civ. P. 7(a), but is hardly an "insufficient defense" or any "impertinent[] or scandalous matter" warranting the Court striking such a filing from the docket. *See* Fed. R. Civ. P. 12(f). Instead, the Court interprets Ms. Gonzalez's motion to strike as a response to Defendants' objection.

The Court agrees with the DOC Defendants, however, that leave to amend would be futile.

Ms. Gonzalez's Second Amended Complaint seeks to make four essential amendments: (1) adding Mr. Aresimowicz as a defendant; (2) adding Senator Osten as a defendant; (3) adding

a spoliation claim; and (4) by Ms. Gonzalez's own statements, adding "300 pages" of "self-authenticating evidence" speaking to her claims. *See* Second Am. Compl.; Mot. to Amend.

As to the addition of Mr. Aresimowicz, Plaintiff's allegations against Mr. Aresimowicz as set forth in the Second Amended Complaint are barred by the doctrine of collateral estoppel.

"[W]hen there has been a final judgment on the merits," the doctrine of *res judicata*, or collateral estoppel, "prevents a plaintiff in the initial case from bringing a second lawsuit against the same defendants arising from the same transaction, or series of connected transactions, in order to relitigate issues that were or could have been raised in the first case." *Boyd v. NYCTL 1996-1 Tr.*, 697 F. App'x 720, 722 (2d Cir. 2017) (summary order) (internal quotation marks and alterations omitted). "This principle prevents a plaintiff from litigating claims that were or could have been raised in a prior action against the same defendant," and "[e]ven claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *Cieszkowska v. Gray Line N.Y.*, 295 F.3d 204, 205 (2d Cir. 2002).

In her companion case, Ms. Gonzalez set forth four counts against Mr. Aresimowicz and AFSCME:

> Count One alleges that Mr. Aresimowicz violated Ms. Gonzalez's First Amendment rights "by censoring her [f]ree [s]peech at the Legislative Office Building . . . on April 16, 2018, April 23, 2018, and March 5, 2020." [Underlying Compl.] ¶ 113. Count Two alleges that Mr. Aresimowicz retaliated against Ms. Gonzalez "by interfering with her employment opportunity on May 15, 2019," and that "AFSCME retaliated by suing [Ms. Gonzalez] for sharing corruption." *Id.* ¶ 114. Count Three alleges intentioanl infliction of emotional distress ("IIED"). Count Four alleges that the Defendants violated Ms. Gonzalez's Fourteenth Amendment rights by interfering with her job interview on May 15, 2019 and by depriving

her of the future pension she could have earned had she been hired for the job. *Id.* ¶ 117.

*Gonzalez*, 2020 WL 6263549, at *5 (alterations in original). There, the Court granted the defendants' motion to dismiss each federal count for failure to state a claim under Rule 12(b)(6),[9] and dismissed the intentioanl infliction of emotional distress count without prejudice for lack of jurisdiction.[10] *See id.* at *8-14.

The Second Amended Complaint sets forth virtually identical claims against Mr. Aresimowicz and the other DOC and State Defendants as in Ms. Gonzalez's prior case. *See* Second Am. Compl. at 60 ¶ 106 (Count One – Freedom of Speech Violations) ("The defendants, the Department of Correction, Angel Quiros, Emily Kennedy, AFSCME, Joe Aresimowicz and Cathy Osten all violated the plaintiff's civil rights, First Amendment Rights by censoring her Free Speech at the Legislative Office Building numerous times on April 16, 2018, April 23, 2018, and March 5, 2020."); *id.* at 60-61 ¶ 114 (Count Two – Retaliation) ("The defendants, the Department of Correction, and AFSCME, Joe Aresimowicz retaliated by interfering with her employment opportunity on May 15, 2019. . . ."); *id.* at 62 ¶¶ 115, 116 (Count Three – Intentional Infliction of Emotional Distress) ("Joe Aresimowicz used the [DOC] to toy with the plaintiff's emotions. . . . The [Defendants] continue to inflict emotional pain by interfering with

---

[9] The Court, however, also observed that as to the First Amendment retaliation and Fourteenth Amendment claims, there was no "clearly established law saving th[e]se claim[s] from the application of qualified immunity." *See id.* at *10 n.7, 12 n.11, 13 n.13.

[10] As to the first retaliation claim, the Court concluded that Ms. Gonzalez had failed to allege "that she ha[d] a First Amendment or other constitutional right to have her testimony preserved or recorded"; "that she ha[d] suffered any plausible injury"; or "that Mr. Aresimowicz and AFSCME affiliates took any actions that were motivated or substantially caused by Ms. Gonzalez's testimony." *Id.* at *9-10. As to the second retaliation claim, the Court concluded that Ms. Gonzalez's claim failed because "[e]ven if true, [her] assertion that Mr. Aresimowicz knew she was taking the physical test, but failed to inform her or otherwise act . . . does not give rise to liability under a theory of retaliation for Mr. Aresimowicz where he was not personally involved," *id.* at *11 (internal quotation marks and alterations omitted), and because she "d[id] not allege that Mr. Aresimowicz or AFSCME were the parties who took any adverse employment action against [her]," *id.* As to the Fourteenth Amendment claim, the Court concluded that Ms. Gonzalez had not sufficiently "alleged that she was deprived of a liberty or property interest within the meaning of the Due Process Clause." *Id.*at *12.

the plaintiff's Free Speech at the Legislative Office Building. . . ."); *id.* at 63 ¶ 117 ("The Defendants violated the plaintiff's 14[th] Amendment Rights by violating procedural law at CHRO. . . . They denied her equal protection of the laws in the hiring process by interfering with her job opportunity on May 15, 2019 in retaliation for exposing corruption between the [DOC] and [AFSCME], Joe Aresimowicz and Cathy Osten.").

Ms. Gonzalez therefore is precluded from adding Mr. Aresimowicz as a defendant in this matter, as the claims set forth in the Second Amended Complaint plainly arise out of the same "transaction, or series of connected transactions," and address "issues that were or could have been raised" in her prior case. *Boyd*, 2017 WL 2589388, at *1; *Cieszkowska*, 295 F.3d at 205-06.

Ms. Gonzalez similarly is barred from amending her Amended Complaint to include as a defendant Senator Osten, who allegedly "was a corrections officer at the Connecticut Department of Correction and was the President of the Lieutenants union" who Ms. Gonzalez allegedly "met with . . . numerous times." Second Am. Compl. at 9 ¶ 12; *id.* at 60 ¶¶ 12, 106. Indeed, Ms. Gonzalez's complaint in her prior case mentions Senator Osten on many occasions, including many specific instances also described in virtually identical detail in the Second Amended Complaint. *Compare* Am. Compl., *Gonzalez*, No. 3:20-cv-00505 (VAB), ECF No. 13, at 7 ¶¶ 10-12 (June 15, 2020) ("Companion Am. Compl.") *with* Second Am. Compl. ¶¶ 17-20. As a result, because "[t]he principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion," *Brodsky v. N.Y.C. Campaign Fin. Bd.*, 796 F. App'x 1, 5 (2d Cir. 2019) (summary order), and Senator Osten's alleged involvement in the case arises out of the same "transaction, or series of

connected transactions" at issue in her prior case, *Boyd*, 2017 WL 2589388, at *1, Ms. Gonzalez may not now bring her substantially identical claims against Senator Osten.[11]

As to Ms. Gonzalez's request that the Court grant her "leave to amend her complaint to add a spoliation claim, a new cause of action polishing up her complaint," Mot. to Amend at 3, this too is futile. As an initial matter, Ms. Gonzalez's proposed Second Amended Complaint does not set forth an independent spoliation claim; rather, she discusses this alleged spoliation in the context of Count One (the First Amendment claim) and Count Two (the retaliation claim), *see* Second Am. Compl. ¶¶ 79, 106, 114. Moreover, the alleged "spoliation" referenced in the Second Amended Complaint also was described in Ms. Gonzalez's companion Complaint, in nearly identical form, *compare* Companion Am. Compl. ¶¶ 113-14 *with* Second Am. Compl. ¶¶ 106, 114, and therefore also may not be raised here under *res judicata* principles. *See Boyd*, 2017 WL 2589388, at *1.

Finally, as to the "300 pages of self-authenticating evidence" purportedly added in the proposed Second Amended Complaint, these are not relevant at the motion to dismiss stage, where the Court views the allegations in the light most favorable to the plaintiff and draws all inferences in the Complaint in the plaintiff's favor. *Cohen*, 711 F.3d at 359; *see also York*, 286 F.3d at 125 ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

---

[11] Even if not barred by *res judicata* principles, had Ms. Gonzalez been permitted leave to file her proposed Second Amended Complaint, the claims against Mr. Aresimowicz and Senator Osten would not survive a motion to dismiss for the same reasons articulated above and in the Court's decision in Ms. Gonzalez's companion case. *See Gonzalez*, 2020 WL 6263549. Therefore, to the extent Ms. Gonzalez's operative complaint, the Amended Complaint, references Mr. Aresimowicz or Senator Osten, the Court will not interpret either to be a party to the case.

Accordingly, Ms. Gonzalez's motion for leave to amend the Amended Complaint, ECF No. 27, will be **DENIED**, and Ms. Gonzalez's motion to strike the DOC Defendants' objection, ECF No. 47, also will be **DENIED**.

As Mr. Aresimowicz and Senator Osten will not be added as defendants to the case, their motions to dismiss, ECF Nos. 51 & 54, are **DENIED as moot**.

For the same reasons, Ms. Gonzalez's motions to strike Mr. Aresimowicz's and Mr. Osten's replies to their motions to dismiss, ECF Nos. 71 & 72,  also are **DENIED as moot**.[12]

### C.  Other Pending Motions

Ms. Gonzalez additionally has filed several other motions, including a motion regarding "abuse of discretion," a motion requesting discovery, a "motion to show cause," a motion for default judgment, a motion for injunctive relief, a motion to amend/correct her memorandum in support of her motion for injunctive relief, a motion to "record[] political malfeasance," and two motions requesting an update on the status of the case.

 The motions requesting an update on the status of the case, ECF Nos. 78 & 79, are **DENIED as moot** in light of this Ruling and Order.

The motion requesting discovery, ECF No. 60, is **DENIED**, as under the District of Connecticut's Local Rules, discovery-related filings are not to be filed with the Court. *See* D. Conn. L. Civ. R. 5(f)(1) ("[E]xpert witness reports, computations of damages, depositions, notices of deposition, interrogatories, requests for documents, requests for admissions, and answers and responses shall not be filed with the Clerk's Office except by order of the Court.").

---

[12] As with Ms. Gonzalez's other motion to strike, ECF No. 47, these motions also would be denied on the merits as they seek to strike filings that are not "pleadings" as contemplated by the Federal Rules, *see* Fed. R. Civ. P. 7(a), and which do not raise any "redundant, immaterial, impertinent, or scandalous matter" warranting striking these filings from the docket, *see* Fed. R. Civ. P. 12(f).

The motion for default judgment, ECF No. 74, is **DENIED**, as the motion is based on Defendants' alleged "fail[ure] to file a Cost Analysis Report," *see* Mot. for Default J. at 1, which, as stated above, is not to be filed with the Court. Additionally, Defendants have appeared in the case, and the Second Circuit has expressed its preference that cases be decided on the merits. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 2003) ("The circumscribed scope of the district court's discretion in the context of a default is a reflection of our oft-stated preference for resolving disputes on the merits."); *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981) (per curiam) (noting that disposition of a case by default is an "extreme sanction" that "must remain a weapon of last, rather than first, resort").

The motion regarding "abuse of discretion by the Connecticut district court," ECF No. 42, the "motion to show cause," ECF No. 56, and the "motion recording political malfeasance" are **DENIED**, as they do not request any cognizable relief and, to the extent they pertain to Ms. Gonzalez's alleged issues with PACER, this issue has already been addressed by the Court in a previous order. *See* Order on Mot. Requesting Waiver of PACER Fees and Court Fees, ECF No. 34 (Nov. 13, 2020); Mot. Requesting Waiver of PACER Fees and Court Fees, ECF No. 28 (Nov. 6, 2020).

Finally, Ms. Gonzalez's motion for injunctive relief, ECF No. 61, has been stayed pending resolution of the pending motions to dismiss. *See* Stay Order. Having granted the motion to dismiss the Amended Complaint and denied the motion to amend the Amended Complaint with a Second Amended Complaint, the Court **GRANTS** Ms. Gonzalez's motion to amend her memorandum in support of the motion for injunctive relief, ECF No. 65, but **DENIES** the injunctive relief sought as moot.

IV.    **CONCLUSION**

For the foregoing reasons, the Court orders as follows:

The DOC Defendants' motion to dismiss, ECF No. 20, is **GRANTED**;

All claims against the Department of Correction and against Commissioner Quiros and Ms. Kennedy in their official capacities are dismissed with prejudice. All claims against Commissioner Quiros and Ms. Kennedy in their individual capacities are dismissed without prejudice to Ms. Gonzalez filing a Third Amended Complaint, by **June 25, 2021**, to correct the deficiencies identified in this Order and Ruling; a failure to file a Third Amended Complaint by **June 25, 2021** will result in this case being dismissed with prejudice;

Ms. Gonzalez's motion to amend the Amended Complaint, ECF No. 27; motion for abuse of discretion, ECF No. 42; motions to strike, ECF Nos. 47, 71, and 72; motion to show cause, ECF No. 56; motion for discovery, ECF No. 60; motion for default judgment, ECF No. 74; and motion recording political malfeasance, ECF No. 75, are **DENIED**;

Mr. Aresimowicz and Senator Osten's motions to dismiss, ECF Nos. 51 & 54, are **DENIED as moot**;

Ms. Gonzalez's motions requesting a status update on the case, ECF Nos. 78 & 79, are **DENIED as moot**;

Ms. Gonzalez's motion to amend/correct her memorandum in support of her motion for injunctive relief, ECF No. 65, is **GRANTED**; and

Ms. Gonzalez's motion for injunctive relief, ECF No. 61, is **DENIED as moot**.

**SO ORDERED** at Bridgeport, Connecticut, this 13th day of May, 2021.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE